UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD L. NISBET,

                        Plaintiff,

         v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                   Defendant.

Case No. C17-5306 RSM

**ORDER REVERSING AND
REMANDING CASE FOR
FURTHER ADMINISTRATIVE
PROCEEDINGS**

Richard L. Nisbet seeks review of the denial of his application for Supplemental Security

Income and Disability Insurance Benefits.  Mr. Nisbet contends the ALJ's residual functional

capacity (RFC) determination fails to account for all of his physical limitations and the ALJ

failed to develop the record.  As discussed below, the Court **REVERSES** the Commissioner's

final decision and **REMANDS** the matter for further administrative proceedings under sentence

four of 42 U.S.C. § 405(g).

## BACKGROUND

Mr. Nisbet is currently 56 years old, has a high school diploma, and has worked as a cook

and laborer.  Tr. 43, 45, 60.  Mr. Nisbet's applications for benefits, alleging disability as of

January 15, 2011, were denied initially April 2, 2014, and on reconsideration June 19, 2014.  Tr.

19.  The ALJ conducted a hearing on June 3, 2015, in which Mr. Nisbet, through counsel,

amended the alleged onset date to February 29, 2012.  Tr. 19.  After the hearing, Mr. Nisbet

submitted additional evidence to the ALJ, which was admitted into the record.  Tr. 19.  The ALJ

issued a decision on October 8, 2015, finding Mr. Nisbet not disabled.  Tr. 19-32.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:**  Mr. Nisbet has not worked since the February 2012 alleged onset date.

**Step two:**  Mr. Nisbet has the following severe impairments: bilateral carpal tunnel syndrome status post releases, osteoarthritis of the knees bilaterally, neuralgias of the feet and ankles bilaterally, and obesity.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:**  Mr. Nisbet can perform less than the full range of light work, limited to: occasional climbing of ramps and stairs; no climbing ropes, ladders or scaffolds; frequent stooping; occasional crouching, crawling and kneeling; frequent pushing and pulling with bilateral upper and lower extremities; frequent but not constant handling and fingering bilaterally; avoiding concentrated exposure to vibrations and hazards.

**Step four:**  Mr. Nisbet cannot perform past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that he can perform, Mr. Nisbet is not disabled.

Tr. 21-31.  The Appeals Council denied Mr. Nisbet's request for review, making the ALJ's

decision the Commissioner's final decision.  Tr. 3.[3]

## DISCUSSION

Mr. Nisbet contends the ALJ's RFC determination fails to account for limitations on

standing and on repetitive hand movements, which are established by medical and other opinions

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

to which the ALJ gave weight. Mr. Nisbet also argues that the ALJ erred in discounting his

testimony as to his wrist impairments, and erred in failing to obtain certain medical documents to

fully develop the record.

## A. Medical Source Opinion Evidence

Where a treating or examining doctor's opinion is not contradicted by another doctor, it

may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th

Cir. 1996). Where contradicted, a treating or examining physician's opinion may not be rejected

without "specific and legitimate reasons supported by substantial evidence in the record for so

doing." *Id.* at 830-31. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting

out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir.

2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). The ALJ is responsible

for evaluating credibility, resolving conflicts in medical testimony, and resolving any other

ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

## B. Four Hours Standing

Mr. Nisbet contends the ALJ erred in failing to incorporate a limitation to standing four

hours a day in the RFC, based on the opinion of Rashpal Raj, P.A.C. The Court agrees.

The ALJ limited Mr. Nisbet to light work, which may "require[] a good deal of walking

or standing…." Tr. 23; 20 C.F.R. §§ 404.1567(b), 416.967(b). The RFC contained no limitation

on walking or standing.

After an April 2013 examination, Mr. Raj opined that Mr. Nisbet could only stand four

hours in an eight hour day. Tr. 486.[4] Although physician's assistants are not acceptable medical

---

[4] After an earlier October 2012 examination, Mr. Raj opined that Mr. Nisbet could stand only

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

sources, an ALJ must still give "germane reasons" for discrediting their testimony.  *Molina v.*

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *and see* 20 C.F.R. § 404.1527.  Noting that Mr. Raj

was not an acceptable medical source, the ALJ nevertheless gave "some weight to his

determinations regarding the claimant's ability to stand" because they were "consistent with the

overall record."  Tr. 30.  The ALJ did not discount Mr. Raj's opinion regarding Mr. Nisbet's

ability to stand.  Tr. 30.[5]  Yet, without explanation, the ALJ failed to include the four-hour

limitation in the RFC.

The Commissioner argues that the ALJ relied on the opinions of Derek J. Leinenbach,

M.D., and Charles Wolfe, M.D., that Mr. Nisbet could stand for six hours.[6]  Tr. 108, 428.  But

while the ALJ accorded those doctors' opinions "great weight," she did not cite them as reason

to discount Mr. Raj's opinion.  Tr. 28.  As such, the Court cannot rely upon the Commissioner's

post-hoc rationalization in order to find either that the ALJ did not err or that the error was

harmless.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-

standing principles of administrative law require us to review the ALJ's decision based on the

reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to

intuit what the adjudicator may have been thinking.").  Dr. Wolfe's and Dr. Leinenbach's

opinions conflict with Mr. Raj's opinion, all of which the ALJ credited as consistent with the

record, and the ALJ must provide explicit reasons in resolving the conflict.  *See Andrews*, 53

F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities.").

---

two hours a day.  Tr. 481.  The ALJ accorded this opinion "little weight," a determination Mr.
Nisbet does not challenge.  Tr. 30.

[5] The ALJ did discount a different portion of Mr. Raj's opinion—for being insufficiently
restrictive regarding postural limitations.  Tr. 30.

[6] The ALJ did not, however, include a six-hour limit on standing in the RFC determination.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 4

The Court concludes the ALJ erred in disregarding Mr. Raj's opinion that Mr. Nisbet could only stand for four hours. This error was harmful because the ALJ failed to include all of the opined limitations in the RFC or in the hypothetical to the vocational expert, and thus Mr. Nisbet may be unable to perform some or all of the jobs identified at step five. As such, the error was consequential to the ultimate nondisability determination. *See Molina*, 674 F.3d at 1115 (an error is harmless where it is "inconsequential to the ultimate nondisability determination" (internal quotation marks omitted). Accordingly, on remand, the ALJ shall evaluate this portion of Mr. Raj's opinion and reconsider the RFC.

## C. Repetitive Handling

Mr. Nisbet contends that the ALJ erred in not incorporating Dr. Wolfe's and Bonnie Anderson's, P.A.C., opined limitation precluding repetitive handling and fingering into the RFC. The ALJ limited Mr. Nisbet to "frequent but not constant handling and fingering bilaterally." Tr. 24. Mr. Nisbet argues that precluding constant activity (and allowing frequent activity) does not preclude repetitive activity. The Court agrees.

The ALJ accorded "great weight" to Dr. Wolfe's opinion. Tr. 28. Dr. Wolfe opined that Mr. Nisbet's "manipulative limitations" were "no constant/repetitive. [L]imited to frequent." Tr. 109. Exertional limitations for upper extremities were "no constant/repetitive." Tr. 108. In the RFC assessment form Dr. Wolfe completed, "frequently" is defined as "cumulatively more than 1/3 up to 2/3 of an 8 hour day" while "occasionally" is anything less than that, and repetitive is not defined. Tr. 108. Repetitive activity performed up to two and a half hours a day would thus not be considered frequent activity, only occasional. The ALJ did not discount Dr. Wolfe's opinion, but failed to include a limitation on repetitive activity in the RFC.

The ALJ accorded "some weight" to Ms. Anderson's assessment of Mr. Nisbet's upper

extremity capabilities. Tr. 29. Ms. Anderson's opinion restricts Mr. Nisbet from "[r]epetitive movements [with his] left hand such as required by being a chef…." Tr. 473. Again, the ALJ did not discount Ms. Anderson's assessment yet, without explanation, failed to include the limitation in the RFC.

The Commissioner argues the ALJ could have interpreted Dr. Wolfe's statements as meaning that Mr. Nisbet was capable of "frequent/repetitive" hand activity. Dkt. 16 at 9. This argument is somewhat illogical, as it would mean that Mr. Nisbet could perform constant hand movement, or repetitive hand movement, but not hand movement that was both constant and repetitive. But the RFC precludes *all* constant handling. Tr. 24. Even if the Court were to accept the Commissioner's odd formulation, the ALJ still erred in failing to incorporate Ms. Anderson's limitation on repetitive left hand movements. And if the ALJ determines that "no constant/repetitive" is ambiguous because it may mean either 'no constant handling and no repetitive handling' or 'no handling that is both constant and repetitive,' she has the duty to develop the record. *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001) (The ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Failure to limit repetitive activity is harmful error because, in determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports and witnesses' descriptions of limitation, to determine what capacity the claimant has for work. *See* 20 C.F.R. § 416.945(a). Similarly, hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir.1995)). This did not occur and thus the

1   jobs identified in step five may be incompatible with Mr. Nisbet's limitations.

2          The Commissioner argues that any error is harmless because the Dictionary of

3   Occupational Titles (DOT) description of one of the jobs identified by the VE, counter clerk,

4   does not include repetitive movements.  *See* Tr. 63; DOT § 249.366-010 (G.P.O.), 1991 WL

5   672323.  However, particularly because the previous issue requires remand, the Court declines to

6   consider whether the jobs identified by the ALJ would or would not be precluded by a limitation

7   on repetitive activity, with or without the added limitation to four hours standing as discussed

8   above.  Moreover, it is the ALJ's duty to assess the evidence, not the court's on appeal.  *See*, *e.g.*,

9   *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

10          On remand, the ALJ shall evaluate the repetitive activity portion of Dr. Wolfe's and Ms.

11  Anderson's opinions and reconsider the RFC accordingly.

12          **D.  Mr. Nisbet's Testimony on his Wrist Impairment**

13          Mr. Nisbet contends the ALJ erred in not finding his radiocarpal degenerative joint

14  disease to be severe in step two, and consequently discrediting his testimony and not

15  incorporating into the RFC limitations based on his testimony that, at times, his wrists and hands

16  swell or are painful or his hand "locks" or freezes while holding an object.  The Commissioner

17  argues the ALJ gave valid reasons to reject Mr. Nisbet's testimony, unrelated to the step two

18  finding.

19          Mr. Nisbet testified that his right hand "hurts when I hold something very long and the

20  left one swells up if I do much with it."  Tr. 46.  His right[7] hand "sometimes will lock and it

21  doesn't want to let loose" of the object he is holding.  Tr. 51-52.  Lifting an approximately eight-

22  pound gallon of milk "bother[ed] my wrist and that would aggravate my upper hand…."  Tr. 55.

23

---

[7] Mr. Nisbet's briefing refers to the locking as happening with his left wrist.  Dkt. 15 at 5.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

"Carrying things, like the groceries in from the car and … laundry" cause his left wrist to swell. Tr. 52. "I hold the knife and, like I said, I used to do it for hours and now I'm about 10/15 minutes is about as long as I want to." Tr. 58.

The ALJ rejected Mr. Nisbet's testimony as inconsistent with his daily activities and with the medical record. To reject a claimant's testimony once an underlying impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (internal citation and quotation marks omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Id.* Here, the ALJ did not find that Mr. Nisbet was malingering. The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. Factors that an ALJ may consider in weighing a claimant's credibility include: inconsistencies in testimony or between testimony and conduct, daily activities, and medical testimony concerning the nature, severity, and effect of the claimant's symptoms. *Id.*

Substantial evidence does not support the ALJ's finding that Mr. Nisbet's testimony is inconsistent with his daily activities. Mr. Nisbet does not claim that he is utterly incapacitated, but that his hand and wrist pain, together with his knee and foot impairments, disable him from gainful employment. *See Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)). The ALJ cites to Mr.

1 Nisbet's ability to perform his own personal care, cook or prepare meals, do light household

2 cleaning, do laundry, grocery shop, and walk around his church. However, these rather basic

3 activities do not contradict Mr. Nisbet's testimony that prolonged use aggravates his wrist

4 impairment. And Mr. Nisbet consistently reports that his performance of even these basic

5 activities depends on his impairments. On a typical day he will "try doing some work around

6 house until hand & knees hurt and swell." Tr. 226. How long housework takes "depends on

7 [how] my hand & knees feel…." Tr. 227. He can walk "sometimes 1/2 mile" but then has to

8 rest for "sometimes [an] hour…." Tr. 230. That Mr. Nisbet can perform basic daily activities, at

9 home on his own schedule with breaks as needed, is not substantial evidence undermining Mr.

10 Nisbet's testimony.

11 Substantial evidence also does not support the ALJ's finding that the reason Mr. Nisbet

12 stopped working was unrelated to his impairment. *See* Tr. 25. Mr. Nisbet testified that he

13 stopped working at his last job because it was far from home and "getting back and forth was not

14 easy…." Tr. 46. It is unclear what Mr. Nisbet meant and the ALJ did not inquire. It may be that

15 his impairments made it difficult to get to and from his job.[8] Without further development,

16 substantial evidence does not support the ALJ's finding.

17 The ALJ also noted that "contrary to the claimant's testimony that doctors have told him

18 that he should only lift up to 10 pounds (hearing testimony [Tr. 54]), … the record contains no

19 medical opinion that is consistent with the claimant's statement." Tr. 26. In fact, Rashpal Raj,

20 P.A.C., who is not an acceptable "medical" source in Social Security Administration proceedings

21

22 [8] The Commissioner cites Mr. Nisbet's loss of his driver's license in 2010 as showing that he
stopped work due to "transportation issues," not his impairments. Dkt. 16 at 11. But Mr. Nisbet

23 continued working for more than a year, and thus the loss of his license cannot be the reason he
stopped working.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 9

but could well be considered a "doctor" by Mr. Nisbet, opined that Mr. Nisbet could only lift 10 pounds maximum. Tr. 480. The Court does not find this to be a meaningful inconsistency such that it undermines Mr. Nisbet's entire testimony.

The ALJ's remaining reason to reject Mr. Nisbet's testimony was that "[p]hysical examinations during the period at issue also call into question the alleged severity of the claimant's symptoms related to his status post carpal tunnel syndrome releases." Tr. 26. Subjective symptom testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence…." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

The ALJ acknowledged that objective medical examinations of Mr. Nisbet's upper extremities showed enlargement (left) and decreased sensation (bilateral) in the median nerve, positive Phalen's test on the left (an indicator of carpal tunnel syndrome), tenderness, pain, reduced range of motion in the left hand, and decreased sensation to touch. Tr. 26. Yet the ALJ determined that findings of normal strength bilaterally undermined Mr. Nisbet's testimony. Tr. 26. However, Mr. Nisbet does not claim weakness in his hands, rather, he alleges pain and swelling with prolonged use. Normal strength demonstrated in a short assessment does not undermine his claims.

The ALJ also cited medical evidence that Mr. Nisbet could "reach for, grip, and hold objects" as reason to discount his testimony. Tr. 26. But again, Mr. Nisbet never claimed that he was completely unable to use his hands, but rather that prolonged use worsens his pain.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

That medical evidence does not show symptoms Mr. Nisbet does *not* allege, and that Mr.

Nisbet's claimed symptoms are not fully corroborated by the medical evidence, is insufficient

alone to reject his testimony. *See Rollins*, 261 F.3d at 857. Substantial evidence does not

support the ALJ's finding that Mr. Nisbet's testimony is contradicted by the medical record.

In sum, the ALJ erred in discounting Mr. Nisbet's testimony. This error was harmful

because Mr. Nisbet alleges greater limitations than the ALJ includes in the RFC or in the

hypotheticals to the VE. On remand, the ALJ should reevaluate Mr. Nisbet's testimony.

### E. ALJ's Duty to Develop the Record

Mr. Nisbet argues the ALJ erred in failing to develop the record because records that Mr.

Nisbet submitted after the hearing are incomplete. At the beginning of the hearing, the ALJ

asked Mr. Nisbet's attorney about Department of Social and Health Services of the State of

Washington (DSHS) evaluations referred to "throughout the record" and asked the attorney to

obtain them. Tr. 42. After the hearing, Mr. Nisbet submitted several documents, which the ALJ

admitted into the record. Tr. 19. Based on references within documents and comparison

between documents, Mr. Nisbet now speculates that some documents in the record are

incomplete and that there may be an additional DSHS evaluation form from a November 2014

office visit. Tr. 453. This is not a claim, as stated, upon which benefits could be granted and,

because remand is required as discussed above, the Court need not rule on it. If the missing

pages and document exist, the record can be further developed on remand.

### CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this

case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

405(g).

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

On remand, the ALJ shall reevaluate Mr. Raj's opinion on standing limits, Dr. Wolfe's and Ms. Anderson's opinions on repetitive motions, and Mr. Nisbet's testimony regarding his wrist impairment. The ALJ shall develop the record as appropriate, reassess Mr. Nisbet's RFC and proceed to step five as necessary.

DATED this 6 day of March 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 12